UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CERTAIN UNDERWRITERS AT LLOYD'S, )
LONDON SUBSCRIBING TO POLICY )
NUMBER BO823PP1308460, *et al.*, )
)
Plaintiffs, )
)
v. ) Civil Action No. 1:18-cv-1421 (TSE/TCB)
)
ADVANFORT COMPANY, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion for Discovery Sanctions (Dkt. 76).[1] Plaintiffs ask the Court to sanction Defendant and impose default judgment for Defendant's failure to comply with this Court's earlier discovery order. For the reasons stated herein, the Court shall GRANT IN PART Plaintiffs' Motion for Discovery Sanctions.[2]

I. PROCEDURAL AND FACTUAL BACKGROUND

A. Case History

On or about October 12, 2013, the Indian government seized the M.V. Seaman Guard Ohio ("*OHIO*"), a vessel chartered by Defendant, and detained the guards and crew aboard the *OHIO*

---

1. Relevant filings before the Court include Plaintiffs' Brief in Support of their Motion to Compel (Dkt. 61) ("Pl.'s Mot. to Compel Mem. Supp."); Defendant's Opposition to Motion to Compel (Dkt. 64) ("Def.'s Compel Opp'n"); Plaintiffs' Reply Brief in Support of their Motion to Compel (Dkt. 65) ("Pl.'s Compel Reply"); Plaintiffs' Brief in Support of their Motion for Discovery Sanctions (Dkt. 77) ("Pl.'s Mot. Sanctions Mem. Supp."); Defendant's Opposition to Motion for Discovery Sanctions (Dkt. 79) ("Def.'s Sanctions Opp'n"); Plaintiffs' Reply Brief in Support of their Motion for Discovery Sanctions (Dkt. 80) ("Pl.'s Sanctions Reply"); Deposition of Ahmed Farajallah (Dkt. 80-1) ("Ahmed Dep."); Deposition of Samir Farajallah ("Samir Dep."); and all attachments and exhibits submitted with those filings.

2. Sanctions that do not involve dismissal, "fall squarely within the jurisdiction of a magistrate judge." *Fin. Markets Int'l, Inc. v. Booz Allen Hamilton, Inc.*, No. 1:11-cv-1299, 2013 WL 5538341, at *1 (E.D. Va. Oct. 7, 2013).

(the "Guards" and "Crew"), charging them with illegally importing weapons into the country ("the Incident"). (Dkt. 35 at 1.)

On November 16, 2018, Plaintiffs filed a complaint for declaratory judgment against Defendant. (Dkt. 1.) Plaintiffs filed their First Amended Complaint several weeks later. (Dkt. 5.) The Amended Complaint seeks declaratory judgment that a now-expired marine liability insurance policy ("the Policy") does not cover any of Defendant's alleged damages arising from the Incident.

On December 19, 2018, Defendant moved for partial summary judgment with respect to counts 1-4, 6-8 of the Amended Complaint. (Dkt. 11.) After complete briefing and oral argument, the Court denied Defendant's summary judgment motion on March 5, 2019. (Dkt. 33.)

Though denying summary judgment, the Court did permit the parties to conduct limited discovery into a number of delineated topics. (*Id.* at 6.) Discovery was to be concluded by Wednesday, June 5, 2019. (*Id.*) However, because Defendant informed the Court that it intended to file a Motion for Reconsideration, the Court stayed discovery pending resolution of Defendant's motion. (Dkt. 35 at 4.) On March 15, 2019, Defendant filed its Motion for Reconsideration, which the Court denied on March 25, 2019. (Dkts. 37, 46.) On June 4, 2019, the Court amended its earlier order, extending the end of discovery until Tuesday, June 25, 2019. (Dkt. 73.)

Defendant also brought counterclaims against Plaintiffs on three separate occasions. The Court twice dismissed those claims with leave to amend. (Dkts. 35, 50.) In dismissing Defendant's Second Amended Counterclaims, the Court provided Defendant leave to amend but warned that no "further amendments" would be granted. (Dkt. 50 at 3.) Plaintiffs' Motion to Dismiss Defendant's Third Amended Counterclaims remains pending. (Dkt. 68.)

### B. Discovery Motions

On March 27, 2019, shortly following the denial of Defendant's Motion for

Reconsideration, Plaintiffs served their First Interrogatories and First Requests for Production on Defendant. (Pl.'s Mot. to Compel Mem. Supp. at 3, Exs. 1-2.) On April 24, 2019, Defendant served its responses and objections to Plaintiffs' discovery requests. (*Id.* at 3, Exs. 3-4.) After meet-and-confer efforts failed, Plaintiffs filed a Motion to Compel on May 24, 2019.

Among other requests, Plaintiffs' motion to compel sought amended responses to Interrogatories 1-10, 13, 14, and 18-20. (*Id.* at 7-12.) For Interrogatories 3-10, Plaintiffs argued Defendant either failed to answer or provided completely evasive responses. (*Id.* at 9-11.) Plaintiffs' interrogatories requested foundational information about Defendant's claims. For instance, Plaintiffs' interrogatories asked Defendant to identify individuals with knowledge of claims against Defendant (Interrogatory 3), to identify and describe all property damage and bodily injury claims (Interrogatory 4), and to identify claims against Defendant brought by its customers (Interrogatory 5). (*Id.* at 9-10, Ex. 1.) Other interrogatories focused on the circumstances surrounding the Incident. For example, Plaintiffs requested that Defendant identify all contracts the Guards were engaged with at the time of the Incident (Interrogatory 6), the contracts the *OHIO* was transporting any of the Guards to (Interrogatory 7), and the activities of the Crew during and in the twenty-four hours leading up to the Incident (Interrogatory 10). (*Id.* at 10-11, Ex. 1.)

In response, Defendant characterized Plaintiffs' motion as "substantively baseless." (Def.'s Compel Opp'n at 1.) Defendant first reasserted its objections; objections it did not file until nearly a month after being served with Plaintiffs' discovery requests. (*Id.* at 1, 3-4.) Defendant then proceeded to argue that it properly responded to each of the Interrogatories at issue. (*Id.* at 4-7.) According to Defendant, it either provided an appropriate narrative response, a citation to produced documents where the information was located, or simply did not know the information requested. (*Id.*)

3

At the hearing held on May 31, 2019, the Court, with a minor exception, granted Plaintiff's Motion to Compel, (Hr'g Tr. 18:8-12, Dkt. 75), ordering Defendant to reanswer Interrogatories 3-14, and 18-20 in narrative form (Hr'g Tr. 17:10-13). In so ruling, the Court held that Defendant's initial responses were "clearly inadequate" as the Interrogatories merely requested "basic information." (Hr'g Tr. 16:10-11.) The Court instructed Defendant to, in its amended responses, "state clearly what you do not have" should the interrogatories ask "for information that you do not have." (Hr'g Tr. 16:21-23.) Defendants were also told that, should they refer to and identify documents in their amended responses, they "must specifically refer to the Bates number. Not just the group, but the Bates number." (Hr'g Tr. 17:20-23.) Later that same day, the Court entered an order granting in part and denying in part Plaintiff's Motion to Compel. (Dkt. 67.)

On June 7, 2019, Defendant provided an amended response to Plaintiffs' interrogatories ("First Amended Response"). (Pl.'s Mot. Sanctions Mem. Supp. at 3, Ex. 1.) Three days later, Plaintiffs sent Defendant's counsel a deficiency letter outlining remaining problems with Defendant's discovery response. (*Id.*, Ex. 2.) The next day, on June 11, 2019, Defendant's counsel refused to amend any of Defendant's responses, asserting that after spending "countless hours reviewing its records and all the relevant documents that it had produced," Defendant provided the most detailed responses it could with "all of the information that it could find that was responsive to the requests." (*Id.*, Ex. 3 at 1.) Given that response, Plaintiffs filed the instant motion for sanctions on June 18, 2019.

In their motion for sanctions, Plaintiffs argue Defendant's First Amended Response to Interrogatories 4-10, 13, and 18 failed to comply with the Court's earlier order.[3] (Pl.'s Mot. Sanctions Mem. Supp. at 6-18.) The motion again raises concerns pertaining to Defendant's failure

---

3. Plaintiffs later added Interrogatory 3 to their sanctions motion. (Pl.'s Sanctions Reply at 4; Hr'g Tr. 3:5-11, Dkt. 88.)

to provide specific, clear responses to some interrogatories, insistence on asserting waived objections, and refusal to cite to specific documents. (*Id.*)

In response, Defendant claims it provided Plaintiffs with all the information available to it. (Def.'s Sanctions Opp'n at 2.) Defendant asserts it satisfied its obligations under the Federal Rules of Civil Procedure, providing as complete answers as it could given the information it had access to. (*Id.* at 3-7.) Defendant also directly claims, without evidence, that Plaintiffs brought the instant motion for sanctions to "maximize" Defendant's litigation costs. (*Id.* at 9-10.)

On July 8, 2019, Plaintiffs filed a reply in support of their motion for sanctions. In the reply, Plaintiffs rely heavily on the deposition testimony of several of Defendant's witnesses. (Pl.'s Reply Sanctions at 2-11.)

On July 12, 2019, the Court held a hearing on Plaintiff's motion for sanctions. After hearing oral argument, the Court found that "the defendant clearly failed to comply with my prior order." (Hr'g Tr. 25:8-9, Dkt. 88.) The Court faulted Defendant for not "answer[ing] interrogatories as 'I don't know'" when [it] didn't know," and for "still equivocat[ing] and [engaging in] double-speak all over the place without actually . . . stating what exactly the facts are." (Hr'g Tr. 25:9-13.) The Court also noted that the answers actually provided by Defendant were "misleading at best, but more likely, obviously, just plain false based on the testimony in the depositions." (Hr'g Tr. 25:16-18.) As a result, finding that the "amended discovery responses are really no better than the first set," the Court ordered Defendant to "fully and completely comply with the discovery requests" by July 17, 2019. (Hr'g Tr. 25:14-27:2.) Following the hearing, the Court entered an Order continuing the motion for sanctions until July 19, 2019. (Dkt. 83.)

On July 17, 2019, Defendant filed another amended response to the disputed interrogatories ("Second Amended Response"). (Dkt. 84.)

The Court then held another hearing on the sanctions motion on July 19, 2019. Although prepared to rule from the Bench, Defendant's counsel insistence on making delayed, additional arguments caused the Court to delay its ruling and to take this matter under consideration to prepare and issue this Memorandum Opinion and Order.

## II. LEGAL STANDARD

District courts can exercise "nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failure to comply with its discovery orders." *Hinkle v. City of Clarksburg, W. Va.*, 81 F.3d 416, 426 (4th Cir. 1996) (citation omitted); *see also Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 779 (E.D. Va. 2017) ("District Courts enjoy broad discretion to select an appropriate [sanction] in light of the totality of the circumstances." (citation omitted)).

In determining whether discovery sanctions are appropriate, courts should determine "(1) whether a party violated a discovery order or Federal Rule of Civil Procedure; (2) whether the violation was 'harmless' or 'substantially justified;' and (3) which sanction is appropriate for the violation." *Vir2us*, 235 F. Supp. 3d at 772 (citing *Samsung Elecs. Co., Ltd. v. Nvidia Corp.*, 314 F.R.D. 190, 195-96 (E.D. Va. 2016)). When determining which sanctions are appropriate, the Fourth Circuit instructs district courts to consider "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (citation omitted).

Federal Rule of Civil Procedure 37(b) authorizes a court to issue sanctions for failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A) ("If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders."). These

sanctions include directing that certain facts be taken as established for the purposes of the underlying action; prohibiting the disobedient party from supporting or opposing certain claims or defenses; striking pleadings in whole or in part; rendering a default judgment against the disobedient party; or dismissing the action or proceeding in whole or in part. Fed. R. Civ. P. 37(b)(2)(A).

III. ANALYSIS

Plaintiffs filed their motion to compel nearly two (2) months after discovery began in this case. Another two (2) months elapsed before this Court was even prepared to rule on Plaintiffs' sanctions motion. Yet, in all that time, Defendant still refuses to craft and produce appropriate discovery responses. Despite direct admonishments and multiple chances, Defendant shows no real signs of complying with this Court's discovery order. Accordingly, the undersigned finds that sanctions are appropriate under Rule 37(b)(2).

**A. Defendant Violated Rule 37(b)(2)**

Defendant clearly violated this Court's discovery order of May 31, 2019. From the bench, the Court ordered Defendant to reanswer numerous interrogatories. The Court gave Defendant specific guidance regarding what Defendant needed to correct in its interrogatories, essentially instructing Defendant to make three major corrections: (1) provide narrative responses to each interrogatory; (2) clearly describe any responsive information or unambiguously state no responsive information exists; and (3) identify documents individually by bates number and not as one large swath. Defendant substantially failed to comply with this simple directive.

An illustrative example is Defendant's responses to Interrogatory 4. Interrogatory 4 asked Defendant to identify and describe each claim asserted or alleged against Defendant for bodily injury or property damages related to the Incident. (Pl.'s Mot. to Compel, Ex. 1 at 4.) In describing

these claims, Plaintiffs requested that Defendant provide basic information such as "the identity of the claimant or claimants," "the nature and cause(s) of the bodily injury or property damaged alleged," when Defendant "received the claim," and whether the claim "resulted in any court or arbitration proceedings." (*Id.*) In its initial response to Interrogatory 4, Defendant, besides offering an exact figure of the total value of the claims and stating the claims were settled without court or arbitration proceedings,[4] informed Plaintiffs that the rest of the responsive information could be located within a set of over two hundred (200) documents. (*Id.*, Ex. 3 at 8; Hr'g Tr. 4:10, Dkt. 75.)

The Court, finding Defendant's reliance on a broad range of documents inappropriate and unresponsive, ordered Defendant to reanswer. (Hr'g Tr. 17:20-23, Dkt. 75.)[5] The Court also provided Defendant with specific instructions with regard to Interrogatory 4, directing Defendant to "clearly and concisely state what the claims are, the basis for them, and everything that their asking for," noting that the information sought "is something that your client should have available and should be able to produce with very little effort on their part." (Hr'g Tr. 16:24-17:17.)

In its First Amended Response to Interrogatory 4, Defendant continued to rely on documents produced in response to Plaintiffs' Document Request No. 1. (Pl.'s Mot. Sanctions Mem. Supp., Ex. 1 at 6.) However, in contravention of the Court's order, Defendant's citation remained a non-specific reference to a large group of documents. (*Id.*) Moreover, while providing two additional sentences describing the basis for the Guards and Crews' claims for bodily injury, that portion of the response remained largely unaltered. In fact, Defendant's most noticeable alteration was an unexplained increase in the total value of the Guards and Crews' claims from

---

4. Defendant did also identify the potential claimants in separate interrogatory responses. (Pl.'s Mot. to Compel Mem. Supp., Ex. 3 at 2-6.)

5. "If you want to—additionally, if you are going to additionally identify documents in these interrogatories['] responses, you must specifically refer to the Bates number. Not just the group, but the Bates number."

8

$5.5 million to $6.7 million. (*Id.*; Pl.'s Mot. to Compel Mem. Supp., Ex. 3 at 7.) Defendant similarly failed to clearly and concisely state the basis for Seaman Guard, Inc.'s property damage claims, only adding that that Seaman Guard "first asserted [the claims] in November 2013," and increasing the value of the claims to $20.9 million from $16 million. (Pl.'s Sanctions Mem. Supp., Ex. 1 at 6-7; Pl.'s Mot. to Compel, Ex. 3 at 7.)

When pressed by Plaintiffs in their deficiency letter to provide more specific information about the Crew and Guards' claims, such as a list identifying the individual claim and claimant, the nature and cause of the harm the claimant alleged, and the date it received the claim, Defendant responded that it could not provide that information. (Pl.'s Mot. Sanctions Mem. Supp. at 8.) Specifically, Defendant stated a more specific response would not be possible as the

> [C]laims from the crew and guards were the same and brought at the same time, in mid-November 2013 . . . . The crew and guards brought their claims because all of their damages incurred while they were in jail. They were not brought as individual claims, they were brought in groups and soon were all combined together. They were not brought as individual claims but were resolved together. They cannot be analyzed on an individual basis, and [Defendant] cannot respond on that basis."

(*Id.*, Ex. 3 at 1.) However, Defendant, for whatever reason, refused to include this information in its First Amended Response as a properly verified interrogatory answer. (*Id.* at 8.) Additionally, if Defendant lacked information about specific claims, or never even received specific claims, the Court's Order required Defendant to unequivocally state that. (*Id.*) Instead, Defendant chose to give evasive and incomplete responses.

Defendant's arguments defending its First Amended Response do little to change the Court's mind. As an initial matter, Defendant, in its briefing with the Court, claimed it did "not have to respond separately for each claimant since they all suffered the same conditions." (Def.'s Sanctions Opp'n at 3.) Besides a vague, unsupported statement about how asbestos policyholders obtain insurance coverage, Defendant cites to no authority for this proposition. (*Id.*) Additionally,

to the extent this may be read as an objection to Plaintiffs' interrogatories, this Court already ruled Defendant waived all of its objections as untimely made.[6] (Hr'g Tr. 15:25-16:2, Dkt. 75.)

More importantly, Defendant's contention that it provided Plaintiffs "with all the information it had in response" to Interrogatory 4, (Def.'s Sanctions Opp'n at 3), is belied by its own witness' deposition testimony. During his deposition, Ahmed Farajallah repeatedly instructed Plaintiffs' counsel to consult the documents Defendant produced to learn the specifics of the Crew and Guards' claims. (Ahmed Dep. 183:12-15, 184:13-16, 185:17-23, 187:6-13, 192:16-21.) But if specifics regarding the Crew and Guards' claims exist in the "documents," Defendant's amended response should have included that information.

Ahmed's deposition also undermines the credibility of Defendant's answer that the Crew and Guards asserted claims for bodily injury. For instance, Ahmed failed to recall a single representative of the Guards who brought any of the alleged claims or conducted any of the settlement negotiations. (Ahmed Dep. 190:1-13, 295:15-24.) Ahmed also could not recall whether the purported settlement agreement with the Guards—an agreement which, in part, promised to pay the Guards unspecified future amounts of money if the Defendant received "further funding" and stopped the Guards from threatening to sue Defendant—was ever memorialized in a written document. (Ahmed Dep. 204:4-21.) Perhaps most alarming is Ahmed's testimony regarding how he calculated the total value for the Crew and Guards' claims. The testimony makes clear the $6.7 million damages number is not based on claims submitted, either individually or jointly, but rather Ahmed's own calculations based on what he believed the Guards might have earned had they not been detained. (Ahmed Dep. 287:1-292:23.) None of this information made it into Defendant's

---

6. "Unless otherwise ordered by the Court, an objection to any interrogatory, request, or application under Fed. R. Civ. P. 26 through 37, shall be served within fifteen (15) days after the service of the interrogatories, request, or application." E.D. Va. Local Civ. R. 26(C).

First Amended Response.

Another illustrative example is Defendant's response to Interrogatory 7. That interrogatory asked Defendant to identify "all the contracts for the provision of off-shore security services to vessels or other off-shore units to which the OHIO was transporting any of the Guards at the time of the Incident." (Pl.'s Mot. to Compel Mem. Supp., Ex. 1 at 5.) Defendant's initial answer merely referenced documents produced in response to Plaintiffs' RFPs. (*Id.*, Ex. 3 at 9.)

In its First Amended Response, Defendant cited to a document which listed the vessels, their embarkation and disembarkation points, and the dates when the *OHIO* was to rendezvous with the vessels ("Operations Schedule"). (Pl.'s Mot. Sanctions Mem. Supp., Ex. 1 at 10.) In its amended response itself, Defendant did provide a breakdown of contract parties and the respective vessels. (*Id.*) While providing more information, Defendant's amended response did not cure all its ills.

For instance, Defendant's 30(b)(6) witness struggled to explain the meaning of the Operations Schedule, describing it as "confusing." (Ahmed Dep. 101:20-25.) Defendant also failed to provide a straightforward answer regarding which vessels the Guards were embarking and disembarking from.[7] (Pl.'s Mot. Sanctions Mem. Supp. at 13-14.) Furthermore, Defendant's response only accounted for thirteen (13) out of the alleged seventeen (17) vessels that the *OHIO* was allegedly transporting the Guards to. (*Id.* at 14; Pl.'s Mot. Sanctions Reply at 8.) And, of those thirteen (13) vessels, only four (4) were transporting Guards *to* vessels. (Pl.'s Mot. Sanctions Reply at 8.) Putting that discrepancy aside, an even larger one looms as the deposition testimony reveals that the *OHIO* only "transits to meet vessels within the vicinity," but does not "travel to meet vessels" usually "stay[ing] in an anchored position outside India's water." (Ahmed Dep. 104:20-

---

7. Defendant again attempted to assert untimely objections. (Def.'s Sanctions Opp'n at 7.)

23.)

Interrogatories 4 and 7's deficiencies and inconsistencies are similarly repeated elsewhere in Defendant's First Amended Response. Defendant continued to assert untimely objections (Interrogatories 5, 6, 18), provide incomplete or misleading answers (Interrogatories 3, 5, 6, 13, 18), and failed to simply state it did not know the answer (Interrogatories 5, 8-10). Given such a performance, the Court truly hopes Defendant counsel's assertion that he's "never seen interrogatories with as thorough responses as this" cannot honestly be true. (Hr'g Tr. 4:14-15, Dkt. 88.)

The Court's disenchantment with Defendant's interrogatory responses does not represent an outlier view of a party's duty under Rule 33. Courts have previously insisted that when parties do not know an answer to an interrogatory, they must explicitly state so. *See, e.g., Transcontinental Fertilizer Co. v. Samsung Co. Ltd.*, 108 F.R.D. 650, 652-53 (E.D. Pa. 1985) ("If a party cannot furnish discovery requests, it should state so under oath and state the reasons for its inability to do so together with the efforts used in attempting to obtain the information."). Similarly, courts do require parties to identify a "specific document and indicat[e] the page and paragraphs that are responsive" rather than a large group of documents when responding to an interrogatory. *Shames v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 894 (S.D.N.Y. 1999); *see also Securities and Exchange Comm'n v. Elfindepan*, 206 F.R.D. 574, 576 (M.D.N.C. 2002) (holding Rule 33(d) inapplicable, in part, because plaintiff's interrogatory response was "more in the nature of a document dump than a specification of documents"). And, most importantly, courts will of course sanction parties when they offer false, misleading, or disingenuous interrogatory answers. *See, e.g., Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995); *Projects Mgmt. Co. v. DynCorp Int'l, LLC*, Case No. 1:11-cv-1345, 2012 WL 13029369, at *4 (E.D. Va. Aug. 15,

2012); *see also Woodward v. Holtzman*, 329 F.R.D. 16, 22-24 (W.D.N.Y. 2018); *Gotch v. Ensco Offshore Co.*, 168 F.R.D. 567, 573 (W.D. La. 1996). Accordingly, the Court was fully prepared to sanction Defendant at the July 12th hearing, but instead decided to give Defendant one last chance to comply after receiving an explicit warning from the Court.

While Defendant's Second Amended responses are marginally better, they do not warrant a complete pardon. Defendant clearly only eked out slightly more information after the Court explicitly warned from the bench and in its order on July 12, 2019, that it might impose sanctions, including default judgment. Moreover, to the extent the Second Amended Response cures any defects, it comes very late in the game as discovery closed approximately a month after Defendant submitted those responses. Defendant's conduct evidences the fact that Defendant has done nothing truly substantive to provide information that Plaintiffs have requested and has provided misleading, incorrect, and incomplete answers. Therefore, the Court finds that Defendant violated this Court's discovery order and thus will be sanctioned.

### B. Defendant's Violations Were Unjustified and Harmful

Despite receiving Plaintiffs' first set of interrogatories approximately four (4) months ago, Defendant continually failed to provide straightforward answers to relatively basic questions. Plaintiffs' interrogatories asked for information surrounding an incident that occurred more than five (5) years ago. An incident Defendant previously attempted to obtain insurance coverage for. (Samir Dep. 257:10-271-25.)

While Defendant's counsel repeatedly asserted they did all they could, provided all the information they had, their answers evidence an obsfuscatory, gamesmanship approach to litigation. Rather than carefully craft interrogatory responses after conducting a reasonable investigation, Defendant instead chose to dump documents, provide inconsistent or misleading

responses, refuse to answer, assert untimely objections, and fail to clearly state when it did not know the information. *Selee Corp. v. McDanel Advanced Ceramic Techs., LLC*, Civil Case No. 1:15-cv-00129-MR, 2016 WL 4546446, at *3 (W.D.N.C. Aug. 31, 2016) ("The Federal Rules of Civil Procedure impose a duty upon companies responding to discovery to 'conduct a reasonable investigation, make reasonable inquiries of its employees, and *fully respond*' to interrogatories and document requests." (emphasis added) (citation omitted)). If Defendant did truly conduct a reasonable investigation, its interrogatory responses fail to reflect that. Therefore, Defendant's refusal to comply with this Court's order to provide complete, proper interrogatory responses is unjustified.

Defendant's violations are far from benign. Plaintiffs requested basic information that is central to the present dispute. Only after discovery closed and this Court directly threatened default judgment as a sanction did Defendant begin to provide slightly more complete answers. *Cf. Vir2us*, 235 F. Supp.3d at 777 (finding sanctions appropriate, in part, because the defendant failed to produce documents until directly threatened with sanctions by the court). Moreover, Defendant's actions forced Plaintiffs to continue taking discovery and litigating this case when earlier, more complete disclosures may have helped resolve this case much sooner.

### C. Sanctions Are Appropriate

Plaintiffs' motion for sanctions asks the Court to impose default judgment against Defendant. In determining what sanctions are appropriate under Rule 37(b), the Fourth Circuit instructs district courts to consider several factors. *Anderson*, 155 F.3d at 504. The Court addresses each factor in turn.

1. *Bad Faith*

The Court finds that Defendant acted in bad faith by failing to comply with the Court's

May 31st discovery order. In the Fourth Circuit, "bad faith includes willful conduct, where the party 'clearly should have understood his duty to the court' but nonetheless 'deliberately disregarded' it." *Axiom Res. Mgmt., Inc. v. Alfotech Sols., LLC*, No. 1:10-cv-1011, 2011 WL 2560096, at *7 (E.D. Va. June 3, 2011) (quoting *Rabb v. Amatex Corp.*, 769 F.2d 996, 1000 (4th Cir. 1985)), *report and recommendation adopted*, 2011 WL 2559806 (E.D. Va. June 27, 2011). Here, the Court specifically instructed Defendant how to properly amend its answers in order to come into compliance with its discovery obligations. Defendant chose not to follow the Court's clear instruction. Even when given a third chance to submit proper answers, Defendant still equivocated in many of its responses. Therefore, the Court must find that Defendant willfully disobeyed this Court's order and thus acted in bad faith.

2. *Prejudice to the Plaintiffs*

As addressed above, the Court finds that Defendant's non-compliance severely prejudiced Plaintiffs. Defendant's refusal to provide straightforward answers to questions about basic facts in this case, prevented Plaintiffs from properly evaluating and addressing this matter. For instance, while asserting it was subject to multiple claims exposing it to liability, Defendant continually refused to provide foundational information needed in order to properly challenge those assertions. With the close of discovery fast approaching, Plaintiffs struggled to obtain a clear, non-evasive answer from Defendant to foundational questions about the case. Even upon receipt of Defendant's Second Amended responses, some of Defendant's responses still constitute a moving target.

Additionally, Defendant's decision to provide slightly more information only at the point of the Court's bayonet similarly hampered Plaintiffs' ability to pursue this case efficiently. Defendant's actions forced Plaintiffs to take depositions it may otherwise not have and frustrated their preparation for those depositions.

3. *Need for Deterrence*

The Court finds that the need for deterrence weighs in favor of serious, severe sanctions. Courts must have the ability to effectively manage their cases, and parties are expected to take the Court's orders, instructions, and timelines seriously. "Continued contumacious behavior and abuse of the Courts through non-compliance with its orders cannot be tolerated. And with discovery's important role in modern litigation, *deterrence is greatly needed.*" *Flame S.A. v. Industrial Carriers, Inc.*, 39 F. Supp. 3d 752, 765 (E.D. Va. 2014) (emphasis added). The Court cannot countenance Defendant's bad faith attempt to comply with this Court's orders and its own discovery obligations. As a result, the Court must fashion sanctions with an appropriate amount of deterrent effect.

4. *Effectiveness of Less Drastic Sanctions*

Finally, the Court finds that sanctions less drastic than default judgment would be appropriate. In making this conclusion, the undersigned understands and takes into consideration the Fourth Circuit's instruction that since terminating sanctions "are the most severe, such orders must be entered with the greatest caution." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). However, the Court also recognizes "the need to preserve the integrity of the judicial process in order to retain confidence that *the process works to uncover the truth.*" *Projects Mgmt. Co. v. Dyncorp Int'l, LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

Presently, Plaintiffs are significantly disadvantaged due to Defendant's non-compliance. Default judgment, however, is not necessary to remedy Plaintiffs' harm. Sanctioning a party with default judgment should be reserved for situations in which a party cannot "prosecute its case" at

all for lack of "essential discovery materials." *Brooks Sports, Inc. v. Anta (China) Co.*, No. 17-cv-1458, 2018 WL 7488924, at *17 (E.D. Va. Nov. 30, 2018) (quotation and citation omitted), *report and recommendation adopted*, 2019 WL 969572 (E.D. Va. Jan. 11, 2019). Instead, in this case, preclusion and monetary sanctions shall adequately serve the Rule's deterrent and remedial purposes. Imposing preclusion sanctions will deter future litigants from engaging in similar conduct with their interrogatory responses. Awarding fees and costs for the expenses incurred in bringing their motion to compel and motion for discovery sanctions will help to remediate the unnecessary cost to Plaintiffs in having to litigate this issue.

The Court finds that any less drastic sanctions would not effectively deter Defendant and other litigants from committing future discovery violations.

## IV. ORDER

For the reasons stated herein, it is hereby

ORDERED that Plaintiffs' Motion for Discovery Sanctions (Dkt. 76) is GRANTED IN PART. It is further

ORDERED that, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A)(ii), Defendant is limited to the answers provided in its Second Amended Response at summary judgment and trial. Defendant may not deviate from those answers in any regard, including any attempts to further "clarify" its answers. Nor may Defendant, either at summary judgment or trial, use, introduce into evidence, or even reference any documents, testimony, or information not already provided to Plaintiffs through discovery. Should Defendant fail to follow this Order, Plaintiffs may seek supplemental sanctions. It is further

ORDERED that Plaintiffs file a statement of fees and costs incurred in bringing their motion to compel and motion for sanctions.

ENTERED this 25th day of July, 2019.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

———————————————
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

Alexandria, Virginia